# IN THE UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF ARKANSAS
## PINE BLUFF DIVISION

DON COOK, ADC # 135485                                                                    PLAINTIFF

v.                      5:14CV00402-BSM-JJV

MOORE, Correctional Officer,
Varner Unit; *et al.*                                                               DEFENDANTS

## **PROPOSED FINDINGS AND RECOMMENDATIONS**

### **INSTRUCTIONS**

The following recommended disposition has been sent to Chief United States District Judge Brian S. Miller. Any party may serve and file written objections to this recommendation. Objections should be specific and should include the factual or legal basis for the objection. If the objection is to a factual finding, specifically identify that finding and the evidence that supports your objection. An original and one copy of your objections must be received in the office of the United States District Court Clerk no later than fourteen (14) days from the date of the findings and recommendations. The copy will be furnished to the opposing party. Failure to file timely objections may result in waiver of the right to appeal questions of fact.

If you are objecting to the recommendation and also desire to submit new, different, or additional evidence, and to have a hearing for this purpose before either the District Judge or Magistrate Judge, you must, at the time you file your written objections, include the following:

       1.      Why the record made before the Magistrate Judge is inadequate.

2. Why the evidence to be proffered at the new hearing (if such a hearing is granted) was not offered at the hearing before the Magistrate Judge.

3. The details of any testimony desired to be introduced at the new hearing in the form of an offer of proof, and a copy, or the original, of any documentary or other non-testimonial evidence desired to be introduced at the new hearing.

From this submission, the District Judge will determine the necessity for an additional evidentiary hearing. Mail your objections and "Statement of Necessity" to:

> Clerk, United States District Court
> Eastern District of Arkansas
> 600 West Capitol Avenue, Suite A149
> Little Rock, AR 72201-3325

## I. INTRODUCTION

Don Cook ("Plaintiff") filed this action alleging the named Defendants[1] failed to protect him from a violent assault by other inmates. (Doc. No. 30.) Now, Defendants have filed a Motion for Summary Judgment (Doc. No. 96) and Plaintiff has responded (Doc. No. 102). Included with Plaintiff's Response is the affidavit of William Guillon (Doc. No. 102-9) which Defendants move to strike (Doc. No. 106) because it was not provided to them prior to the discovery deadline. Both Motions are ready for a decision.

## II. BACKGROUND

The parties agree that on October 16, 2013, Plaintiff was physically assaulted by six inmates while he slept in the 21 barracks of the Arkansas Department of Correction ("ADC") Varner Unit.

---

[1] Defendants Randy Watson, Lasaundra Malone, Sharon Williams, Kenny Bolden, Moses Jackson, and Jeremy Andrews were previously dismissed from this action. (Doc. No. 83.) Defendants Cher Jones, Jamesha Madden, Travis Moore, and Tarence Whaley remain.

(Doc. No. 104 ¶ 15.) These inmates were not assigned to Plaintiff's barracks and had come from elsewhere in the unit. (Doc. No. 96-1 at 6.) Plaintiff alleges Defendants Jones, Madden, Moore, and Whaley violated his constitutional rights by failing to protect him from this attack. (Doc. No. 30.) Of the four named Defendants, only Travis Moore was in the vicinity of 21 barracks at the time of the assault, though he was not in the barracks itself. It is undisputed that Defendants Cheryl Jones and Jamesha Madden were not working the shift during which the attack occurred. (Doc. No. 104 ¶¶ 29- 34.) Tarence Whaley was assigned to the sallyport and, though Plaintiff asserts this assignment is included within the same security area as 21 barracks, both parties acknowledge he was some distance away at the time of the attack. (*Id.* ¶ 36.)

The parties dispute what happened in the attack's aftermath. Plaintiff says Defendant Moore, the first responding officer, waited a significant amount of time before calling for assistance and extracting him. (*Id.* ¶ 47.) Plaintiff also says Moore allowed all inmates not assigned to 21 barracks to leave. (*Id.*) By contrast, Defendants argue Moore realized the assault had occurred at roughly 11:57 a.m., radioed for backup immediately, and removed Plaintiff from the barracks at 11:58:47 a.m. (Doc. No. 98 ¶¶ 47-48.)

**III. MOTION TO STRIKE**

Defendants move to strike the affidavit of William Guillon. (Doc. No. 106.) Mr. Guillon, an inmate at the Varner Unit, was present in 21 barracks on the date of Plaintiff's assault. (Doc. No. 102-9.) He states he witnessed the assault and some of the events before and after it. (*Id.*) Defendants argue Mr. Guillon's affidavit should be stricken because it was not disclosed prior to the December 1, 2015, discovery deadline or the January 15, 2016, dispositive motions deadline. Defendants argue the Court should strike all portions of the affidavit which contain hearsay or speculative statements. For his part, Plaintiff argues there is no legal basis for striking the affidavit

3

and he disclosed Mr. Guillon as a witness on January 6, 2016 - the same day the affidavit was executed and before the Motion for Summary Judgment was filed.

Defendants' arguments are well taken, but I decline to recommend striking Mr. Guillon's affidavit. Although Mr. Guillon was identified as a witness by Plaintiff's counsel after the close of discovery, there is no evidence this delay was undertaken in bad faith or that Defendants suffered any prejudice. Moreover, given that Mr. Guillon was incarcerated alongside Plaintiff during the time period relevant to this lawsuit, I conclude Defendants were well positioned to determine he might be in possession of relevant information through a review of ADC records. Finally, Defendants could have sought leave of the Court to depose Mr. Guillon or to extend the deadline for dispositive motions after he was added as a witness on January 6, 2016.

I also decline to strike the entire affidavit or portions of it for hearsay or speculation at this time. Defendants take issue with Mr. Guillon's assertion that an unnamed inmate informed an unnamed correctional officer that there were unassigned inmates in the barracks. The officer purportedly responded by asking the inmate what he wanted done about the situation. Plaintiff persuasively argues that, rather than striking the affidavit or some portion thereof, a court may simply disregard whatever portions of the affidavit it determines do not meet the standards of Federal Rule of Civil Procedure 56(e). *See, e.g., Nodoushani v. S. Conn. State Univ.*, 507 Fed. Appx. 79, 80 (2nd Cir. 2013) (unpublished). Given that Mr. Guillon's affidavit fails to make clear whether he personally observed the foregoing I exchange, I will decline to accept the above-referenced conversation to prove either that unassigned inmates were in the barracks[2] or that prison staff had actual knowledge of their presence and declined to address it.

Based on the foregoing, I recommend denying Defendants' Motion to Strike.

---

[2] The parties do not appear to dispute this, however.

**IV.     SUMMARY JUDGMENT STANDARD**

Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is proper "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex v. Catrett*, 477 U.S. 317, 321 (1986). When ruling on a motion for summary judgment, the court must view the evidence in a light most favorable to the nonmoving party. *Naucke v. City of Park Hills*, 284 F.3d 923, 927 (8th Cir. 2002). The nonmoving party may not rely on allegations or denials, but must demonstrate the existence of specific facts that create a genuine issue for trial. *Mann v. Yarnell*, 497 F.3d 822, 825 (8th Cir. 2007). The nonmoving party's allegations must be supported by sufficient probative evidence that would permit a finding in his favor on more than mere speculation, conjecture, or fantasy. *Id.* (citations omitted). A dispute is genuine if the evidence is such that it could cause a reasonable jury to return a verdict for either party; a fact is material if its resolution affects the outcome of the case. *Othman v. City of Country Club Hills*, 671 F.3d 672, 675 (8th Cir. 2012). Disputes that are not genuine or that are about facts that are not material will not preclude summary judgment. *Sitzes v. City of West Memphis, Ark.*, 606 F.3d 461, 465 (8th Cir. 2010).

**V.     SUMMARY JUDGMENT ANALYSIS**

Defendants advance several arguments in favor of their Motion for Summary Judgment. They argue that (1) sovereign immunity bars official capacity money damages

against them; (2) Plaintiff has failed to state a constitutional claim against them; and (3) they are entitled to qualified immunity. For the reasons stated hereafter, I conclude Defendants' Motion should be granted.

    A.    Official Capacity Claims for Damages

It is settled law that an official capacity claim for damages against a state or municipal actor is akin to a claim against the state or municipality itself. *Kentucky v. Graham*, 473 U.S. 159, 166 (1985). It necessarily follows that official capacity claims for damages against state employees are barred by the Eleventh Amendment. *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 70-71 (1989). Here, all of the Defendants are undisputedly employees of the ADC and, therefore, protected. Plaintiff concedes this point, but notes that sovereign immunity does not bar his claims for injunctive and declaratory relief. It is, therefore, recommended that any claims for damages made against any Defendant in their official capacity be dismissed.

    B.    Qualified Immunity

Defendants' qualified immunity argument should be addressed first.[3] Qualified immunity protects officials who acted in an objectively reasonable manner and shields a government official from liability when his or her conduct does not violate "clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Qualified immunity is a question of law, not a question of fact. *McClendon v. Story County Sheriff's Office*, 403 F.3d 510, 515 (8th Cir. 2005). Thus, issues concerning qualified immunity are

---

[3]As noted above, Defendants raise a separate argument that Plaintiff's failure to protect claims fail as a matter of law. Analysis of that argument overlaps with a discussion of qualified immunity, and I elect to evaluate immunity first because "[q]ualified immunity is immunity from suit rather than a mere defense to liability, and therefore, immunity issues should be resolved at the earliest possible stage of the litigation." *Saucier v. Katz*, 533 U.S. 194, 201 (2001).

appropriately resolved on summary judgment. *See Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985) (the privilege is "an immunity from suit rather than a mere defense to liability; and like an absolute immunity, it is effectively lost if a case is erroneously permitted to go to trial.").

To determine whether defendants are entitled to qualified immunity, courts generally consider two questions: (1) whether the facts alleged or shown, construed in the light most favorable to the plaintiff, establish a violation of a constitutional or statutory right; and (2) whether that right was so clearly established that a reasonable official would have known that his or her actions were unlawful. *Pearson v. Callahan*, 555 U.S. 223, 232 (2009); *see also Saucier v. Katz*, 533 U.S. 194, 201 (2001).[4] Defendants are entitled to qualified immunity only if no reasonable fact finder could answer both questions in the affirmative. *Nelson v. Correctional Medical Services*, 583 F.3d 522, 528 (8th Cir. 2009).

A failure to protect claim is composed of two elements. First, the claimant must demonstrate that his conditions of incarceration posed a substantial risk of serious harm. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). Second, the claimant must demonstrate that the defendant prison official knew of and disregarded the risk to his safety. *Id*. at 837. The second prong requires a finding that the defendant was deliberately indifferent. *See Whitson v. Stone County Jail*, 602 F.3d 920, 923 (8th Cir. 2010) (in analyzing failure to protect claims "the subjective inquiry regarding an official's state of mind is one of deliberate indifference' to inmate health or safety.") Deliberate indifference is akin to criminal recklessness. *See Olson v. Bloomberg*, 339 F.3d 730, 736 (8th Cir. 2003).

---

[4]Courts are "permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Nelson v. Correctional Medical Services*, 583 F.3d 522, 528 (8th Cir. 2009) (quoting *Pearson v. Callahan*, 555 U.S. at 236).

1. Defendants Jones, Madden, and Whaley

I find the second prong has not been satisfied as to Defendants Jones, Madden, or Whaley. The parties agree that none of these individuals were present at the time of the assault. Jones was not at work that day (Doc. No. 104 ¶¶ 29- 34) and Madden was not assigned to the shift during which Plaintiff was attacked. (*Id*.) Whaley was working the sallyport, away from the area where the assault occurred. (*Id*. ¶ 36.)

Plaintiff argues that each of these Defendants was informed of his safety concerns in the days prior to the attack, but he acknowledges he never specifically referenced any of the inmates who assaulted him. (*Id*. ¶ 24, ¶¶32 - 3.) Instead, the concerns Plaintiff brought to staff's attention before the attack were either vague or unrelated to the individuals who assaulted him. None of the six attackers were on his enemy alert list and he admits he never had problems with any of them prior to his assault. (Doc. No. 96-1 at 8; Doc. No. 96-2 ¶¶ 19-25.) The lone grievance he filed concerning his safety referenced three inmates who were assigned to 21 barracks and were not involved in the assault. (Doc. No. 96-1 at 9-11.) At his deposition, Plaintiff testified that his previously voiced safety concerns were not based on any prior altercations, but on a negative feeling or 'vibe.' (*Id*. at 11.) While there is no strict requirement that a victim has complained about his attackers or brought the specific threat to his custodians beforehand, the weight of evidence convinces me that Jones, Madden, and Whaley were not deliberately indifferent toward a risk they knew or should have known.

Plaintiff also argues that Jones, Madden ,and Whaley should be held responsible in their supervisory capacities for failing to properly supervise Defendant Moore. It is settled law that a supervisor cannot be held vicariously liable for his or her subordinate's unconstitutional acts. *White v. Holmes*, 21 F.3d 277, 280 (8th Cir. 1994). Rather, "[t]o establish personal liability of the

8

supervisory defendants, [the plaintiff] must allege specific facts of personal involvement in, or direct responsibility for, a deprivation of his constitutional rights." *Clemmons v. Armontrout*, 477 F.3d 962, 967 (8th Cir. 2007). In his Second Amended Complaint, Plaintiff alleges Jones, Madden, and Whaley (1) maintained inadequate policies for inmate safety; (2) failed to properly train or discipline their subordinates; and (3) knew or had reason to know that under staffing at the facility precluded the adequate protection of inmates under their care. (Doc. No. 30 ¶¶ 96- 99.)

At the times relevant to this lawsuit, each held the rank of sergeant (*Id*. ¶¶ 10-12) and there is no evidence any had input into unit policy creation or hiring practices. Plaintiff's claim that these Defendants failed to properly supervise or train Defendant Moore also falls short of deliberate indifference. Moore had previously been disciplined for allowing inmates into the wrong barracks and, after the assault on Plaintiff, admitted he had been aware of what proper procedure entailed, but failed in his duty to enforce it. (Doc. No. 102-7 & 102-8.)[5] This suggests his supervisors had taken reasonable steps to train him and had succeeded in instilling knowledge of proper procedure.

Finally, Plaintiff claims Defendant Whaley failed to patrol the area which included 21 barracks or to otherwise assist Moore on the day of the assault. As noted above, the record establishes Whaley was working the sallyport on the day in question. There is no indication he was aware an attack on Plaintiff was either imminent or at a higher risk of occurring on October 16, 2013. It may be Whaley was negligent in failing to diligently patrol the zone or offer Moore additional assistance on that day, but negligence falls short of deliberate indifference. *See Daniels v. Williams*, 474 U.S. 327, 328 (1986); *see also Hart v. City of Little Rock*, 432 F.3d 801, 805 (8th Cir. 2005).

    2.    Defendant Moore

The parties do not dispute Defendant Moore was not inside 21 barracks at the time of the

---

[5]These exhibits are filed under seal.

attack. (Doc. No. 104 ¶ 39.) He was, however, charged with overseeing barracks security on October 16, 2013, and was the first officer to notice the attack had occurred. Plaintiff alleges Moore was deliberately indifferent insofar as (1) he allowed the unassigned inmates responsible for the assault to enter Plaintiff's barracks; (2) he failed to conduct an inmate count on October 16, 2013, even after he was informed that unassigned inmates were in the barracks; and (3) he failed to conduct a shakedown which might have revealed that Plaintiff's attackers were in possession of the improvised weapon which was used in the assault. After review of the evidence I conclude that, while Defendant Moore may have been negligent in the discharge of his duties, he was not deliberately indifferent toward a serious risk of harm to the Plaintiff.

As noted above, there had been no prior altercations between Plaintiff and the inmates who assaulted him. No evidence before me indicates Moore was aware or ought to have been aware that these inmates, despite being unassigned to 21 barracks, posed a danger to Plaintiff or any other inmate in the area. Plaintiff's deposition testimony indicates that, prior to the assault which occurred while he slept, he thought little of the unassigned inmates because they were neither threatening nor bothering him at that time. (Doc. No. 96-1 at 13.) Plaintiff also testified that the attack came as a complete shock to him. (*Id*. at 21.) As such, even if Moore was aware that unassigned inmates were in 21 barracks, I cannot conclude he was aware of the grave risk they posed to Plaintiff. Once he realized the attack had occurred, the video evidence indicates Moore acted quickly[6] in calling for

---

[6]The affidavit of William Guillon, provided in support of Plaintiff's Response, claims that Plaintiff lay on the floor for forty-five minutes until other inmates in the barracks alerted the officer (presumably Moore) to the attack. (Doc. No. 102-9 ¶¶ 14-15.) Mr. Guillon then states that Moore entered the barracks and allowed all unassigned inmates to leave. (Id. ¶ 16.) Finally, he claims that medical help did not arrive for another thirty minutes after that. (*Id*. ¶ 17.) These claims are contradicted by the video evidence provided by Defendants, however. The video shows that Moore did not open the door until back up arrived and medical personnel arrived on the scene minutes after that. (Doc. No. 96-8 11:58:21 - 12:02:03.)

help and extracting Plaintiff from the barracks.  (Doc. No. 96-8 at 11:57 -12:00.)

Taking Plaintiff's allegations as true and viewing the record in his favor, there is little question that Moore was less than exemplary in discharging his duties on the day in question.  His failure to adhere to proper policy and procedure may well have been negligent, perhaps grossly so.  It may also be the case that an officer who was more diligent in enforcing ADC policy, conducting shakedowns, and taking count of his charges might have prevented the attack.  Nevertheless, the applicable standard does not demand exemplary conduct or even non-negligent conduct.  It asks whether Moore was deliberately indifferent toward a risk of which he had subjective awareness.  Given that this demands a mind-set akin to criminal recklessness, I decline to find as much.

Inmate violence is a sad fact of prison life.  That does not diminish the tragedy that befell Plaintiff, nor does it make such incidents acceptable.  I have weighed his allegations seriously and do not recommend dismissing the claims against Moore, or any of the other Defendants, lightly.  My interpretation of the record evidence and the applicable law, however, convinces me that dismissal is appropriate.

### 3. Substantive Due Process

In addition to his failure to protect claims, Plaintiff also raises substantive due process claims against each of the Defendants based on the same incident.  To recover under section 1983 for a substantive due process violation a claimant must show that a defendant "violated a fundamental right in a way that shocks the conscience." *Keefe v. City of Minneapolis*, 785 F.3d 1216, 1222 (8th Cir. 2015) (internal quotations omitted).  Courts have found conscience shocking behavior where a defendant's misconduct is "…so severe …so disproportionate to the need presented, and …so inspired by malice or sadism rather than a merely careless or unwise excess of zeal that it amounted to a brutal and inhumane abuse of official power literally shocking to the conscience." *Moran v.*

*Clarke*, 296 F.3d 638, 647 (8th Cir. 2002) (internal citations omitted).  In light of the foregoing analysis on Plaintiff's failure to protect claims, I also decline to find that any of the Defendants' conduct was conscience shocking.

## VI. CONCLUSION

IT IS, THEREFORE, RECOMMENDED THAT:

1. Defendants' Motion to Strike (Doc. No. 106) be DENIED.

2. Defendants' Motion for Summary Judgment (96) be GRANTED.

3. Plaintiff's claims against Defendants Cher Jones, Jamesha Madden, Travis Moore, and Tarence Whaley be DISMISSED with prejudice.

IT IS SO RECOMMENDED this 17th day of March, 2016.

_____
JOE J. VOLPE
UNITED STATES MAGISTRATE JUDGE